**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|                              |   |                                        |
|------------------------------|---|----------------------------------------|
|                              | : |                                        |
| LARRY DALE JOHNSON,          | : |                                        |
|                              | : | Civil Action No. 12-2544 (RMB)         |
| Petitioner,                  | : |                                        |
|                              | : |                                        |
| v.                           | : | **OPINION**                            |
|                              | : |                                        |
| DONNA ZICKEFOOSE,            | : |                                        |
|                              | : |                                        |
| Respondent.                  | : |                                        |
|                              | : |                                        |

---

This matter comes before the Court upon Petitioner's multiple filings docketed as Docket Entries Nos. 14 to 17, and 19 to 31.

I.   BACKGROUND

In light of the convoluted procedural history of this matter, a brief summary of the same appears warranted.

On April 30, 2012, Petitioner submitted a lengthy document styled as a § 2241 petition.  See Docket Entry No. 1.[1]

---

[1]   The Petition was a 75-page document. "To put the span of [Petitioner's submission] in perspective, it [was] much like [his] version of Leo Tolstoy's 'War and Peace.'"  <u>Murakush Caliphate of Amexem Inc. v. New Jersey</u>, 2011 U.S. Dist. LEXIS 51887, at *69 (D.N.J. May 13, 2011) (quoting <u>Mann v. GTCR Golder Rauner L.L.C.</u>, 483 F. Supp. 2d 884, 891 (D. Ariz. 2007), original brackets omitted).  Habeas Rule 2(d), titled "Standard form," provides that "[t]he petition must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule."  The standard form and this District's form, in turn, direct habeas litigants to "[s]tate <u>concisely</u> every ground on which [the litigant's] claim[s] that [(s)he is] being held unlawfully.  Summarize <u>briefly</u> the <u>facts</u> supporting each ground."  <u>See</u> District's § 2254 Habeas Form (emphases by underlining in original).  Therefore, the Petition was not in compliance in the requirements of Habeas Rule 2(d).

Petitioner followed his Petition by a memorandum and motion "to Compell the Clerk to Perform Clerical duties to secure the Just, Speedy and Inexpensive Determination of [his] Petition."[2] See Docket Entries Nos. 2 and 3 (capitalization and lack thereof in original). The Court, therefore, screened the Petition and denied Petitioner's motion. See Docket Entries Nos. 4 and 5.

Screening the Petition, the Court noted that Petitioner raised a multitude of civil rights claims that could be asserted under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), but were not cognizable in habeas review. See Johnson v. Zickefoose, 2012 U.S. Dist. LEXIS 166148, at *22-23 (D.N.J. Nov. 20, 2012). These claims, therefore, were dismissed.[3]

---

[2] Petitioner asserted that the Clerk's Office violates its obligation to serve the Petition upon Respondents and force Respondent's answer. However, unlike in civil matters, there is no compulsory service in habeas matters and, a fortiori, no compulsory obligation to answer: such obligations could be given rise only by a judicial order. See 28 U.S.C. § 2243 (federal district courts have a pre-service duty to screen and summarily dismiss habeas petitions that plainly show the petitioner is not entitled to relief); see also Habeas Rule 4 (same).

[3]
[Petitioner] asserts numerous claims that concern the conditions of his confinement rather than the fact or duration of his confinement. He alleges claims of denial of medical care, retaliatory transfers and disciplinary actions, denial of access to the courts (via denial of postage stamps, etc.) and interference with his legal mail. [Petitioner] also claims that he is forced to work despite his total disability, is denied care giver services and wheelchair accessible housing and services. He seeks a transfer to a prison

In addition, the Court distilled three distinct lines of habeas challenges and directed Respondent to answer those. See id. at *25 (listing the following Petitioner's habeas lines of challenges: "[(a)] the BOP decision to deny him five months jail credit, [(b)] the failure of the BOP to assess his pre-release [half-way house] placement as mandated under the Second Chance Act, and [(c)] the BOP's disciplinary sanction resulting in the loss of good conduct time").[4]

---

> medical facility that can accommodate his level 2 chronic care assessment. These claims were [already] raised by Johnson in an earlier action, Civil No. 11-6754 (RMB) . . . . In addition, [Petitioner] alleges claims of overcrowded conditions, sexual harassment, failure to protect (from the harm of another inmate), and use of excessive force in violation of his Eighth Amendment right against cruel and unusual punishment. He also alleges work-related injuries, classification or custody status issues, and denial of disciplinary due process claims. All of these claims involve issues related to the conditions of his confinement, and are not properly asserted in this § 2241 action, as they would not alter his sentence or undo his conviction. Therefore, these claims must be dismissed for lack of jurisdiction under § 2241.

Johnson, 2012 U.S. Dist. LEXIS 166148, at *22-23.

[4] Since the Petition made ambiguous statements as to Petitioner's proper exhaustion of administration remedies with regard to each line of these habeas claims, the Court – recognizing that some claims might warrant non-prejudicial dismissal on the failure-to-exhaust grounds – found it unwarranted, at *that* juncture, to direct the Clerk to commence two additional matters for Petitioner in order to entertain each line of his challenges on the merits in a separate action. Habeas Rule 2(e) requires separate petitions to challenge separate determinations. See Muniz v. Zickefoose, 2011 U.S. Dist. LEXIS 115766, at *13 (D.N.J. Sept. 30, 2011) (noting the

Upon that development, Petitioner informed the Clerk of his transfer to the Devens medical facility, in Massachussetts, and filed a motion for default judgment, asserting that Respondent failed to answer his Petition, even though Respondent's time to answer was still running. <u>See</u> Docket Entries Nos. 11 and 12. Respondent, meanwhile, timely filed the answer asserting Petitioner's failure to exhaust his administrative remedies and, in addition, stating that each line of Petitioner's claims was meritless and did not warrant habeas relief. <u>See</u> Docket Entry No. 13. In support of its position, Respondent filed an extensive administrative record and accompanying affidavits. <u>See</u> Docket Entries Nos. 13-1 to 13-5. Respondent's service of the answer upon Petitioner prompted his filing of the seventeen submissions at bar. <u>See</u> Docket Entries Nos. 14 to 17, and 19 to 31. Specifically:

Petitioner's submission in Docket Entry No. 14 stated that he was transferred to the Solano Jail in California, even though the BOP records kept showing his continuous housing in Massachusetts. His submission in Docket Entry No. 15: (a) asserted that he could not exhaust his administrative remedies during the pendency of this matter due to his transfer from the FCI Forth Dix to Massachusetts, but did not explain his failure to exhaust *prior* to filing his Petition; (b) verified his housing

same as "axiomatic"), aff'd, 460 F. App'x 165 (3d Cir. 2012).

4

in Massachusetts; (c) conceded that his jail-time claims were a request to "correct" his sentence on the basis of <u>Setser v. United States</u>, 132 S. Ct. 1463 (2012); (d) conflated, anew, his loss-of-credit habeas claim with his <u>Bivens</u> medical claims, and (e) sought reinstatement of his lost good-conduct-time credit and grant of jail-time credit on the basis that he was confined to a wheelchair. His submission in Docket Entry No. 16 asserted "transfer" from the in Massachusetts facility to the very same facility, while the submission in Docket Entry No. 17 asserted the Massachusetts officials' election not to transfer him to a half-way house in accord with the preliminary determination reached in Fort Dix. His submission in Docket Entry No. 19 requested summary judgment as to his Second Chance Act claims and sought his placement in a half-way house either in Oregon, Washington, or California. His submission in Docket Entry No. 20 raised a new <u>Bivens</u> challenge (namely, that, in Massachusetts, he was assigned to work tasks "beyond [his] physical ability"). His submissions in Docket Entries Nos. 21 and 22 restated his Second Chance Act claims anew and asserted that he had not had his final Second Chance Act assessment in Massachusetts. His submission in Docket Entry No. 23 re-asserted his "transfer" from the Massachusetts facility to the very same facility and, in addition, raised <u>Bivens</u> access-to-the-courts claim. His submission in Docket Entry No. 24 raised new <u>Bivens</u> conditions of

confinement claims: these claims were against the Massachusetts

officials and alleging problems with sewage and errors in

Petitioner's medical record and treatment. His submission in

Docket Entry No. 25 asserted that his final Second Chance Act

evaluation was held by the Massachusetts officials and yielded a

decision to place him in a half-way house for 60 to 90 days (in

light of his refusal to perform assigned work tasks). His

submission in Docket Entry No. 26 was yet another application for

a summary judgment, this time as to all three lines of his habeas

claims. His submission in Docket Entry No. 27 invited this Court

to conclude that his housing in Massachusetts was improper being

costlier than what his housing would have been at a half-way

house. His submission in Docket Entry No. 28 requested a

"strike" of the affidavits attached to Respondent's answer,

asserting that these affidavits were "hearsay." His submission

in Docket Entry No. 29 sought an order directing enforcement of

the preliminary Second Chance Act determination reached at Fort

Dix, since it yielded a result more favorable to Petitioner (150

to 180 days) than the final determination (60 to 90 days) reached

in Massachusetts. Yet, his submission in Docket Entry No. 30

asserted that the preliminary Second Chance Act determination at

Fort Dix violated his rights. Finally, his submission in Docket

Entry No. 31 requested transfer of the instant matter to

California and, in addition, alleged that he was wrongly denied

access to a Residential Drug Abuse Treatment Program ("RDAP,"
that might have qualified him for reduction of sentence) since he
believed he developed an addiction to pain-reducing medications
during the period of his confinement.

For the reasons detailed below, Petitioner's three line of
habeas challenges asserted _ab initio_ in his Petition will be
addressed on the merits, with two lines of challenges being
severed into two individual actions under Habeas Rule (e).
Analogously, Petitioner's two habeas claims raised post-pleading
will be severed into new actions, as detailed _infra_.

II.  SECOND CHANCE ACT CHALLENGES

As detailed _supra_, Petitioner's Second Chance Act challenges
present a conflation of three distinct and different habeas
claims.

At the time of filing his Petition, Petitioner asserted that
the Fort Dix officials failed to conduct his preliminary
evaluation for transfer to a half-way house.  Shortly after his
commencement of this matter, such preliminary evaluation was
conducted by the Fort Dix officials and yielded a recommendation
that Petitioner would be placed in a half-way house for the
period of 150 to 180 days.

He later expressed his displeasure with said determination,
asserting that, in his opinion, it violated his rights, even
though he simultaneously sought this Court's _enforcement_ of that

determination.

Also during the pendency of this matter, Petitioner was transferred to a medical facility in Massachusetts, where his final Second Chance evaluation took place. *That* evaluation yielded a determination that Petitioner should be placed in a half-way house for the period of 60 to 90 days in light of his refusal to perform the assigned work tasks. At this juncture, Petitioner is challenging *that* Massachusetts determination.

As Respondent correctly pointed out, Petitioner's claims that the Fort Dix officials failed to conduct his preliminary evaluation has long become moot, and should be dismissed as such.

Petitioner's displeasure with the preliminary recommendation made by the Fort Dix officials (as to Petitioner's 150-to-180-day placement in a half-way house) was improperly raised in his post-pleading "Notice of Retaliatory Denial," docketed as Docket Entry No. 30.[5] See <u>Bell v. City of Phila.</u>, 275 F. App'x 157, 160 (3d

---

[5] Respondent is correct in asserting that Petitioner's preliminary Second Chance Act evaluation at Fort Dix did not violate his rights, since it was made upon a due assessment of all statutory factors. Section 3624, referred-to as the Second Chance Act, <u>see</u> Pub. L. No. 110-199, extended the maximum amount of time that the BOP may place an inmate in a CCC from 180 days to twelve months. <u>See</u> 18 U.S.C. § 3624(c)(1). Courts have consistently held that the Second Chance Act does not guarantee a one-year placement, but "only directs the Bureau of Prisons to consider placing an inmate in a [CCC] for up to the final twelve months of his or her sentence." <u>Lovett v. Hogsten</u>, 2009 U.S. App. LEXIS 28957 (6th Cir. Dec. 29, 2009); <u>see also</u> <u>Nelson v. Zickefoose</u>, 2013 U.S. Dist. LEXIS 3757 (D.N.J. Jan. 9, 2013) (same); <u>Travers v. Federal Bureau of Prisons</u>, 2009 U.S. Dist.

Cir. 2008) (a litigant cannot plead claims in any non-pleading
document, be it moving papers, an opposition to a motion or the
litigant's traverse); Gilmour v. Gates, McDonald & Co., 382 F.3d
1312, 1315 (11th Cir. 2004) (same); Veggian v. Camden Bd. of
Educ., 600 F. Supp. 2d 615, 628 (D.N.J. 2009) (same).

To the extent an actual claim could be read into his
displeasure with the preliminary recommendation made at Fort Dix,
that claim too became moot when the Massachusetts' officials
elected to discard that recommendation and held Petitioner's
final Second Chance Act evaluation, upon which they entered a
superseding determination, i.e., that Petitioner's half-way-house
period should be reduced to 60-to-90 days, in light of his
refusal to perform the assigned work tasks.

In sum, Petitioner's original Second Chance Act claim (i.e.,

---

LEXIS 110901 (D.N.J. Nov.30, 2009)("nothing in the Second Chance
Act entitles Petitioner to a halfway house placement longer than
the 120-150 days already approved.  These pre-release placement
decisions are committed, by statute, to the discretion of the
Director of the Bureau of Prisons, whose exercise of discretion
is to be guided by the enumerated considerations"); Creager v.
Chapman, 2010 U.S. Dist. LEXIS 26843 (N.D. Tex. Mar.22, 2010)
(although Petitioner disagrees with her CCC placement date after
consideration of the § 3621(b) factors, this "does not establish
a constitutional violation, as nothing in the Second Chance Act
or § 3621(b) entitles [Petitioner] or any other prisoner to any
guaranteed placement in a residential reentry center[ ]" and
"'the duration of [CCC] placement is a matter to which the [BOP]
retains discretionary authority'") (citations and quotation
omitted); Wires v. Bledsoe, 2010 U.S. Dist. LEXIS 9094 (M.D. Pa.
Feb.3, 2010) ("[even if] the petitioner's unit team recommended
significantly less than six months (only 60 days) in a [CCC],
there is no basis to infer that their discretion was [abused]").

failure-to-evaluate) mooted shortly after commencement of this matter, while his first post-pleading Second Chance Act claim against the Fort Dix officials (_i.e._, displeasure with the 15-to-180-day period) mooted in the midst of this action. Hence, the sole currently viable Second Chance Act claim was raised in Petitioner's post-pleading submission that challenged the findings of his Massachusetts officials.

That claim should have been raised by means of a _new and separate_ habeas petition, <u>see</u> Habeas Rule 2(e), and, upon proper administrative exhaustion (or upon a due showing that exhaustion should be excused) – filed with the court of appropriate jurisdiction, which is the District of Massachusetts.[6]

While it appears superfluous to commence a new habeas action for Petitioner in order to litigate his now-mooted and, as the record demonstrates, substantively meritless challenges against the Fort Dix officials, it appears warranted to commence a new and separate matter for Petitioner with regard to his recently-minted post-pleading Second Chance Act claim against the Massachusetts officials. <u>Cf.</u> <u>George v. Smith</u>, 507 F. 3d 605, 607 (7th Cir. 2007) ("Claim A . . . should not be joined with

---

[6]  <u>See</u> <u>Rumsfeld v. Padilla</u>, 542 U.S.426, 442 (2004) (jurisdiction for habeas corpus petitions challenging present physical confinement lies in only one district: the district of petitioner's confinement at the time of petitioner's filing of the petition); <u>accord</u> <u>Braden v. 30th Judicial Circuit Court</u>, 410 U.S. 484, 494-95 (1973).

unrelated Claim B . . . .  Unrelated claims . . . belong in

different suits, . . . to prevent the sort of morass that [a

multi]-claim . . . suit produced . . . .  A buckshot [pleading]

that would be rejected if filed by a free person . . . should be

rejected if filed by a prisoner").  The Clerk, therefore, will be

directed to commence such new habeas matter for Petitioner.[7]

III. JAIL-TIME CREDIT AND GOOD-CONDUCT-TIME CREDIT CLAIMS

Petitioner's two other habeas lines of claims asserted in

the Petition also warrant severance into their own habeas

actions: under Habeas Rule 2(e).  Since Respondent's answer and

Petitioner's multiple post-pleading filings provided this Court

with a record enabling the Court to address these claims on the

merits, such reviews are conducted in the instant Opinion.

A.    <u>Jail-Time Credit</u>

Petitioner's jail-time credit challenge, as asserted in his

Petition, alleged that he was denied a five-month credit for the

time he served at the Lane County jail in Oregon.

However, the record provided by Respondent showed that

---

[7]    In that new matter, Respondent will be directed to: (a)
state Respondent's position as to the transfer of this matter to
the District of Massachusetts (since Petitioner raised this claim
in his post-pleading submission executed while he was housed in
Massaxhusetts); and (b) inform the Court of Petitioner's transfer
to a half-way-house, if such takes place during the interim.  To
expedite that matter, Petitioner will be directed to detail his
exhaustion efforts (as to his Second Chance Act claims against
his Massachusetts officials) or show cause as to why his failure
to comply with the exhaustion requirement should be excused.

Petitioner served that five-month period on the basis of the Oregon state court's conviction. See Docket Entry No. 13-4, at 8 (judgment imposed upon Petitioner's being found guilty of contempt). As Respondent correctly pointed out, since that five-month period was already credited against Petitioner's state sentence, it could not have been credited against his federal sentence. See 18 U.S.C. § 3585; see also United States v. Wilson, 503 U.S. 329, 331 (1992).

Moreover, and causing this Court substantial concern, Petitioner already litigated the very same claim, which was dismissed in Johnson v. Thomas, Civil Action No. 11-0515 (ST) (D. Or.); see also Docket Entry No. 13-2, at 9-17 (replicating the decision of the United States Court for the District of Oregon as to Petitioner's § 2241 petition raising this very challenge). Hence, Petitioner's jail-time credit challenge appears to be both meritless and an abuse of writ.[8]

---

[8] Where a habeas litigant is attempting to re-litigate the very same issue time and again, or where the litigant raises claims already known to him as facially meritless, it is well within the broad scope of the All Writs Act, 28 U.S.C. § 1651(a), for a district court to issue an order restricting the filing of such frivolous cases by that litigant. See e.g., In Re Oliver, 682 F.2d 443, 445 (3d Cir. 1982) (citing Lacks v. Fahmi, 623 F.2d 254 (2d Cir. 1980) (per curiam); Harrelson v. United States, 613 F.2d 114, 115 (5th Cir. 1980) (per curiam); Clinton v. United States, 297 F.2d 899, 901 (9th Cir. 1961), cert. denied, 369 U.S. 856 (1962)). If a petitioner persists at raising his already litigated claims or already dismissed challenges, he risks abusing the equitable nature of the habeas writ. See Sanders v. United States, 373 U.S. 1, 17-19 (1963); Furnari v. United States

Seemingly mindful of this fact, Petitioner, being served with Respondent's answer, made a new and qualitatively different assertion in his traverse. He alleged that he was seeking not a credit; rather, he was seeking a de facto "sentence adjustment" in the amount of these five months.[9] Specifically, he asserted that he: (a) transitioned from his state custody into his federal custody; (b) was of the opinion that his federal sentencing judge could have sentenced him to a term retroactively concurrent to his contempt-based state term of five month; and (c) believed that the Supreme Court ruling in Setser somehow entitled him to a retroactively concurrent federal "re-sentencing" by this Court.

Petitioner's position is meritless. To start, in Setser, the Supreme Court held that a federal court had the power to impose a sentence concurrent to a yet-to-be-imposed state sentence, i.e., a prospectively concurrent sentence. This, in turn, means that the Setser scenario has nothing in common with a retroactively concurrent "re-sentencing" Petitioner hopes to obtain. Moreover, the statutory, regulatory and case law governing the matters of retroactive concurrence allow, but by no means mandate, the sentencing court to impose the appropriate

---

Parole Comm'n, 531 F.3d 241, 250 (3d Cir. 2008).

[9] Petitioner stated that he was challenging his currently served federal sentence (imposed by the District of Oregon upon his conviction of being a felon in possession of a firearm).

sentence.  See Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002); 18

U.S.C. § 3584; U.S.S.G. § 5G1.3.  Therefore, the District of

Oregon did not violate Petitioner's rights by electing not to

impose a retroactively concurrent sentence.

Finally, and paramount here, any challenge to Petitioner's

sentence, as imposed (rather than as executed by the BOP), cannot

be raised in a Section 2241 action: such challenges *must* be

raised in a timely 28 U.S.C. § 2255 motion filed with the

*sentencing* court.  See Okereke v. United States, 307 F.3d 117,

120 (3d Cir. 2002); Cradle v. Miner, 290 F.3d 536, 538 (3d Cir.

2002).  Hence, Petitioner's "sentence adjustment" position raised

in his traverse is dismissed for lack of jurisdiction or, in

alternative, as facially meritless, while his original "jail-

credit" claim is subject to dismissal for failure to show a

violation of his federal rights.

    B.   Good-Conduct-Time Credit

The foregoing leaves the Court with only one of the three

habeas lines of claims asserted in the Petition, *i.e.*, with

Petitioner's challenges to loss of his good-conduct-time ("GCT").

That loss-of-GCT sanction ensued from an incident which took

place on February 13, 2011.  The report produced in connection

with that incident reads, in pertinent part, as follows:

>    [On the date of the incident, a prison officer, who
>    supervised kitchen and dining room activities]
>    inform[ed Petitioner] about a job change that [the

officer] was giving him in [the officer's] kitchen
office. [Petitioner] then yelled in front of other food
service at [the officer] that he will not work for [the
prison officer] and that he was 100 percent disabled.
He also stated in a loud and yelling tone of voice "I
am going to sue you and you don't want to fuck with
me." [Petitioner] stated that [the officer's] name was
named in a law suit several times from his last
incarceration . . . at the [facility.  Then,
Petitioner] raised his cane toward [the officer] in a
threatening manner [waiving it] about 2 inches from
[the officer's] chest and face. . . . [The officer]
grabbed the end of the cane and took it from
[Petitioner].

Docket Entry No. 13-5, at 19.

Less than an hour and a half later, Petitioner was served

with the incident report and interviewed by another officer, who

informed Petitioner of his rights; Petitioner denied the

allegations made in the report but declined to call any witnesses

on his behalf.  During the initial investigation, Petitioner

again denied that the incident took place but still declined to

call witnesses and did not request a staff representative for the

purposes of his disciplinary hearing.  In addition, he refused to

sign the documents notifying him of his rights.  Moreover, he

waived his right of appearance at the hearing, causing the

disciplinary officer to reach the determination on papers, as

submitted by both sides.  Finding the officer's incident report

and accompanying statements more credible, the disciplinary

officer concluded that Petitioner committed the acts known as

"Threatening Another With Bodily Harm" and "Insolence Toward a

Staff Member" and imposed various sanctions.[10]   The final

disciplinary report was duly served upon Petitioner.[11]

While convicted prisoners retain the protections of the Due

Process Clause of the Fifth and Fourteenth Amendments that the

government may not deprive them of life, liberty, or property

without due process of law, see Wolff v. McDonnell, 418 U.S. 539,

556 (1974); Haines v. Kerner, 404 U.S. 519 (1972), these

protections are "subject to restrictions imposed by the nature of

the regime to which [prisoners] have been lawfully committed."

Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may

arise from either of two sources: the Due Process Clause itself

or from state or federal law.   See Hewitt v. Helms, 459 U.S. 460,

466 (1983); Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir.

1999).   Where the government has created a right to good time

credits, and has recognized that a prisoner's misconduct

authorizes deprivation of the right to such credits as a

sanction, the prisoner is entitled to a hearing by an impartial

disciplinary tribunal, Wolff, 418 U.S. at 570-71, i.e., by an

---

[10]   All sanctions other than the loss of GCT credits are not
subject to review in a habeas actions; the loss of GCT credits
was 27 days.

[11]   Petitioner appealed his sanctions to the BOP Regional
Office; he alleged, in his appeal, that the officer who executed
the report physically "assaulted" Petitioner.

officer excluding "only those [prison] officials who have a
direct personal or otherwise substantial involvement . . . in the
circumstances underlying the charge." <u>Meyers v. Alldredge</u>, 492
F.2d 296, 306 (3d Cir. 1974).

In addition, within the setting of an administrative
hearing, the due process guarantees have two arms, one
"quasi-procedural" and the other "quasi-substantive." <u>Mitts v.
Zickefoose</u>, 869 F. Supp. 2d 568, 575 (D.N.J. 2012).  To comply
with the quasi-procedural arm, prison officials must provide a
prisoner facing sanctions with: (1) a written notice of the
charges at least 24 hours prior to his hearing, (2) an
opportunity to call witnesses and presented documentary evidence
in his defense unless it is unduly hazardous to institutional
safety/correctional goals, and (3) a written statement as to the
evidence relied on and the reasons for the disciplinary action.
<u>See</u> <u>Wolff</u>, 418 U.S. at 564-66.

On its quasi-substantive side, the due process requires that
findings of a prison disciplinary official be supported by "some
evidence" in the record.  <u>See</u> <u>Superintendent, Massachusetts
Correctional Institution at Wolpole v. Hill</u>, 472 U.S. 445, 454-56
(1985).  Ascertaining whether the "some evidence" standard is
satisfied "does not require examination of the entire record,
independent assessment of the credibility of witnesses, or
weighing of the evidence." <u>Id.</u> 455.  "Instead, the relevant

question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56 (emphasis supplied).[12]

Here, Petitioner's incident report supplied the required "some evidence," and no statement in the report was so illogical as to cast a doubt on its veracity. Moreover, all Petitioner's quasi-procedural due process rights were meticulously preserved, and none of his actions or elections could lend support to his

---

[12] Hence neither the "beyond a reasonable doubt" nor even the "preponderance of evidence" standard is applicable to a prison hearing. See, e.g., Hairston v. Heffron, 2010 U.S. Dist. LEXIS 134999, at *13 (D.N.J. Dec. 21, 2010) ("there is no question that the 'some evidence' standard is less exacting than the preponderance of the evidence standard: it merely requires that the decision not be arbitrary or not without any support in the record") (citing Gaither v. Anderson, 236 F.3d 817, 819 (7th Cir. 2000); Brown v. Fauver, 819 F.2d 395 (3d Cir. 1987); Gibbs v. King, 779 F.2d 1040, 1044 (5th Cir. 1986)). However, the "some evidence" requirement is violated if a disciplinary sanction is rendered either (a) without any factual basis, or (b) on the basis of facts that are shown to be false. Cf. Williams v. Federal Bureau of Prisons, 85 F. App'x 299, 303 (3d Cir. 2004) (noting, without endorsement, the holding of in Paine v. Baker, 595 F.2d 197, 201 (4th Cir.1979), that "[i]n certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied upon [by an administrative body] to a constitutionally significant degree [and to the petitioner's detriment]"). Thus, the "quasi-procedural" and "quasi-substantive" inquiries of the due process overlap where, for instance, the incident report contains statements so illogical that they vouch for its falsity or where an inmate: (a) might, potentially, show the falsity of the incident report filed against him by calling witnesses; but (b) is denied an meaningful opportunity to call or locate these witnesses. See, e.g., Mitts, 869 F. Supp. 2d at 576; Cannon v. Schultz, 2010 U.S. Dist. LEXIS 59468 (D.N.J. June 16, 2010).

position that the incident did not take place in actuality.

Therefore, within the limited scope of § 2241 review, this Court cannot find a violation of Petitioner's rights.[13]  See Livingood v. Longley, 2012 U.S. Dist. LEXIS 52264 (W.D. Pa. Apr. 13, 2012) (observing that the BOPthe district court and citing Chevron U.S.A. v. Nat'l Res. Def. Council, 467 U.S. 837 (1984)), aff's sub nom Livengood v. Bureau of Prisons, 503 F. App'x 104 (3d Cir. 2012) (per curiam).  Petitioner's GCT credit claims warrant no habeas relief.

IV. RDAP CLAIMS

Finally, the Court notes Petitioner's latest post-pleading claim asserting that he was denied RDAP enrollment.  As all other Petitioner's post-pleading claims, this challenge was improperly raised in this matter.  See Habeas Rule 2(e).

Moreover, there is no indication that this challenge was duly exhausted administratively.  In addition, this challenge, as alleged, appears facially meritless.

The RDAP was designed to assist inmates suffering from a pre-conviction drug and/or alcohol dependency, and enrollment is unavailable to those inmates who do not have such dependency.

In accordance with this statutory requirement, the

---

[13]  Petitioner's displeasure with the affidavits Respondent appended to its exhibits cannot amount to a viable procedural or evidentiary challenge, since these affidavits are not amenable to the "hearsay" rules governing either civil or criminal trials.

Bureau of Prisons has published RDAP program rules in
28 C.F.R. § 550.50, et seq., and in BOP Program
Statement 5330.11, entitled Psychology Treatment
Programs.  Under these program rules, in order to
assess if an inmate has a *verifiable documented drug
abuse problem*, drug abuse program staff must first
determine if the inmate has a *substance abuse disorder*
by conducting the RDAP Eligibility Interview and by
reviewing all pertinent documents in the inmate's
central file to corroborate self-reported information.
Additionally, *there must be verification in the
pre-sentence investigation* report or other similar
documents in the central file which supports the
diagnosis.

Chuong Lam v. Hufford, 2012 U.S. Dist. LEXIS 30463, at *6-7 (M.D.

Pa. Feb. 13, 2012) (citations omitted, emphasis supplied).

Here, Petitioner asserted that he developed a dependency on

pain-reducing medications consumed during his incarceration.

Petitioner's self-diagnosed dependency cannot qualify as a

verifiable document, not can it show the required

substance/alcohol dependency and, a fortiori, it cannot have any

reflection in his pre-sentence report.

Therefore, as drafted this claim warrants no habeas relief,

but Petitioner will be allowed an opportunity to offer the Court

a clarification.

V.    CONCLUSION

To facilitate the foregoing, Petitioner's challenges will be

severed into new habeas matters, that is, unless these claims

have become facially moot.[14]

The instant matter will be reserved for the two mooted habeas claims, that is, the one asserted in the Petition and the

_____

[14] The following four new § 2241 actions will be commenced for Petitioner:

a.  an action based on his recently raised challenges to the final Second Chance Act determination reached by the Massachusetts officials during the time when Petitioner was confined at the Devens medical facility.  In that matter, Respondent will be directed to state Respondent's position as to transfer of this matter to the District of Massachusetts and inform this Court of Petitioner's placement in a half-way house during the interim: so to avoid a transfer of a facially mooted matter.  Petitioner will be directed to detail his administrative exhaustion or show cause as to excuse of the exhaustion requirement;

b.  a new matter based on Petitioner's jail-time credit claims. Since these claims have been shown facially meritless, they will be dismissed.  The new matter will be commenced to avoid confusion and conflation of Petitioner's multiple habeas and Bivens claims in the event Petitioner elects to seek an appellate review;

c.  a new matter based on Petitioner's GCT credit claims.  Since these claims too have been proven meritless, they will be dismissed, and the new matter will be commenced to avoid undue confusion/conflation of Petitioner's multiple habeas and Bivens claims in the event he elects to appeal; and

d.  a new matter based on Petitioner's recently raised RDAP claims.  Since these claims appear meritless as raised, they will be dismissed.  However, Petitioner will be granted a narrowly tailored leave to amend his RDAP challenges by asserting facts showing that: (i) he had suffered a qualifying pre-conviction drug/alcohol dependency; (ii) he sought a RDAP enrollment but had it denied; and (iii) he exhausted his administrative remedies as to said denial.

21

one raised in Petitioner's post-pleading submission.[15]

Petitioner's IFP status, granted in connection with the instant matter, will be extended to all new habeas matters.

Petitioner's <u>Bivens</u> challenges, be they raised anew (that is, after this Court's dismissal of those claims at the screening stage) or later injected into his post-pleading submissions, will be dismissed for lack of jurisdiction. Such dismissal will be without prejudice to raising these claims in an appropriate <u>Bivens</u> action, that is, unless these claims were already raised in a <u>Bivens</u> action and, thus, would be duplicative if re-raised.

Petitioner's applications for summary judgment will be dismissed as facially misplaced, since Rule 56 is a procedural device applicable to civil actions, not habeas matters.

Petitioner's request for transfer of this matter to a federal court in California will be denied as moot or, in the

---

[15]    In other words, the instant matter will be reserved for:

a.    Petitioner's Second Chance Act challenges asserting that the Fort Dix official failed to conduct his preliminary Second Chance Act evaluation. That line of claims became moot when the preliminary review was conducted; and

b.    Petitioner's Second Chance Act claim that the Fort Dix officials' preliminary determination (recommending placement in a half-way house for 150 to 180 days) violated Petitioner's rights. That claim was proven meritless by the record provided by Respondent and, in addition, became moot when the preliminary determination of the Fort Dix officials was superceded by the final determination reached by the Massachusetts officials.

alternative, for lack of merit, since Petitioner was not confined in California during the time when his claims matured.[16]

An appropriate Order follows.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**

Dated: January 8, 2014

---

[16] All other Petitioner's applications, too numerous to repeat in this footnote, will be dismissed as moot or, alternatively, for lack of merit, as not warranting a detailed discussion. In light of this facial lack of merit of Petitioner's multiple applications, the Court takes this opportunity to stress to Petitioner that clear and concise submissions, filed only when warranted, give credence to a litigant's position, while multiple, voluminous and meritless applications detract from the credibility of a litigant's position. As one court observed, "[Petitioner's] 'poetic license' [statements] are not a basis for relief. Simply put, dry facts stated in a clear and concise pleading speak volumes for the purposes of any legal proceeding, while eloquent poetic 'nothings' are invariably dismissed as pure rhetoric." Clauso v. Glover, 2012 U.S. Dist. LEXIS 139205, at *21-22 (D.N.J. Sept. 26, 2012); accord In re Telfair, 745 F. Supp. 2d 536, 580 (D.N.J. 2010) ("The courts in this nation stand ready to address challenges brought by litigants in good faith. Which, in turn, means that the judiciary — including the Judges in this District — expect litigants to treat their litigation with utmost seriousness, without abusing legal process and without unduly testing of the resolve or common sense of the judiciary").